# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 7, 2026

Lyle W. Cayce
Clerk

_____

No. 25-20194

_____

United States of America, *ex rel* Bud Conyers, *Relator*,

*Plaintiff—Appellant*,

*versus*

Kellogg Brown & Root, Incorporated; Kellogg Brown & Root Services, Incorporated; Kellogg Brown & Root, L.L.C.,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CV-4024

_____

Before Stewart, Graves, and Oldham, *Circuit Judges*.

Per Curiam:

Appellant Bud Conyers sued Appellee Kellogg Brown & Root, Inc. (KBR) under the False Claims Act (FCA). The Government intervened but then dropped Conyers' claims, and he did not receive a share of the suit's settlement proceeds. He moved for attorney fees. Because the FCA's text requires a *qui tam* plaintiff to receive a proceeds' share to collect attorney fees, costs, and expenses, we AFFIRM the district court's denial of Conyers' motion for attorney fees.

No. 25-20194

## I

"The FCA imposes civil liability on any person who presents false or fraudulent claims for payment to the Federal Government." *United States ex rel. Conyers*, 108 F.4th 351, 354 (5th Cir. 2024) [hereinafter *Conyers I*] (citation modified); *see also* 31 U.S.C. §§ 3729–33. It can be enforced through civil *qui tam* actions filed by private parties, or "relators." *Conyers I*, 108 F.4th at 354. "When a relator files suit, the Government can intervene, assuming primary responsibility for the case, and can add additional claims." *Id.* (citation modified). If the Government prevails in the action or settles, the relator may be entitled to a share of the proceeds. *See* 31 U.S.C. § 3730(d)(1).

## II

This case's procedural history and the Government's related investigation into KBR are recounted in a previous opinion. *Conyers I*, 108 F.4th at 354.

Conyers is a veteran who drove supply convoys for KBR in Iraq in 2003. *Id.* He was dismissed for reporting a kickback scheme involving certain KBR employees. Conyers filed a *qui tam* suit against KBR under the FCA in 2006. *Id.* He claimed that KBR employees used mortuary trailers for delivery of consumable supplies, received kickbacks from vehicle suppliers, and billed the United States for prostitutes. *Id.*

The Government intervened in 2013 and filed its own complaint in 2014. *Id.* The Government's complaint included some of the allegations from Conyers' suit, along with other claims. *Id.* The Government eventually informed the parties that it would not pursue Conyers' original claims. *Id.* at 355. In 2022, the parties settled the other claims—not Conyers'—and KBR agreed to pay the United States over $13 million. *Id.* Conyers moved for a relator's share of the settlement, which the district court partially granted. *Id.*

2

No. 25-20194

The *Conyers I* panel reversed, concluding that Conyers was not entitled to a share of the proceeds because a relator is "entitled to a share only of a settled 'claim' he brought, not additional claims added by the Government." *Id.* at 359. And because the district court erred in awarding him a share of the proceeds, it also erred in awarding him attorney fees. *Id.* at 361 n.11.

On remand, Conyers renewed his motion for attorney fees. The district court denied the motion, relying on *Conyers I*—because Conyers did not receive a relator's share, he was not entitled to attorney fees.

Conyers appeals.

### III

This court reviews statutory interpretations of the FCA de novo. *Vanderlan v. United States*, 135 F.4th 257, 264 (5th Cir. 2025).

### IV

Though the Government intervened in Conyers' suit, it dropped his claims and he did not receive a relator's share of the settlement. Conyers argues that the district court erred when it decided that the "zero percentage of award payable by the Government" meant he was not entitled to attorney fees, costs, and expenses from KBR. He contends that he is statutorily entitled to those fees, according to the FCA's plain text and legislative history.

KBR counters that a relator is not entitled to attorney fees and expenses when he does not receive a relator's share of the proceeds.

### A

"Statutory interpretation always begins with the text of the statute." *United States v. Joseph*, 102 F.4th 686, 689 (5th Cir. 2024). The disputed

3

statutory subsection addresses awards to *qui tam* plaintiffs. *See* 31 U.S.C. § 3730(d)(1).

First, the subsection explains that "[i]f the Government proceeds with an action brought by a person [for a violation of the FCA], such person shall . . . receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim . . . ." *Id.*

Second, "[a]ny payment to a person under the first . . . sentence of this paragraph shall be made from the proceeds." *Id.* The "person" that receives payment from the proceeds is the same "person" that brought an action in which the Government intervened.

Third, "[a]ny such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." *Id.* To understand who the "such person" is in this sentence, we use the "rule of the last antecedent." Under this canon of construction, "[a] pronoun, relative pronoun, or demonstrative adjective generally refers to the nearest reasonable antecedent." Antonin Scalia & Bryan A. Garner, *Reading the Law: The Interpretation of Legal Texts* 144 (2012). "Such" in "such person shall also receive an amount for reasonable expenses," is a demonstrative adjective. *See* Bryan A. Garner, *Garner's Dictionary of Legal Usage* 859 (3d ed. 2009).[1] "Such person" refers to the nearest reasonable antecedent. The nearest antecedent—in the previous sentence—is the person that brought an action *and* received payment from its proceeds. Consequently, a relator may only recover

---

[1] A "demonstrative adjective" is "[a]n adjective used to indicate its referent's location (spatially, temporally, or abstractly) in relation to the discourse context." *Oxford English Dictionary*, https://www.oed.com/dictionary/demonstrative-adjective_n?tl=true (last visited Mar. 27, 2026).

attorney fees and costs if he received a relator's share of the proceeds of the action or settlement.

Conyers counters that "such person" refers generally to a *qui tam* plaintiff. Conyers points to other subsections within the statute that refer to "such person" as "the person who brought the FCA action in which the Government proceeded." *See* 31 U.S.C. §§ 3729–30.

But that reading deprives the phrase of its context. "[S]tatutory language must be read in context since a phrase gathers meaning from the words around it." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (citation modified). If the person entitled to attorney fees were every *qui tam* plaintiff, Congress could have declined to modify "person" by the word "such," or clarified that these fees were available to a person that brought an action, as it stated in § 3730(d)(1)'s first sentence. But it did not.

Because the statute's text is not ambiguous, we do not consider the parties' arguments regarding legislative history. *See Adkins v. Silverman*, 899 F.3d 395, 403 (5th Cir. 2018).

**B**

This holding is in line with other circuits that have considered the question.

In *Bryant*, the Sixth Circuit also interpreted § 3730(d)(1). *United States ex rel. Bryant v. Cmty. Health Sys., Inc.*, 24 F.4th 1024, 1031 (6th Cir. 2022). In determining who "such person" was, the court "look[ed] generally to the 'closest appropriate word.'" *Id.* at 1032 (quoting *In re Sanders*, 551 F.3d 397, 399 (6th Cir. 2008) (quoting Bryan A. Garner, *Garner's Modern American Usage* 523–24 (2d ed. 2003))). Working its way through the references to "person" within the subsection, the court concluded that "such a person, who (1) commenced an action in which the government

intervenes and (2) receives a share of the proceeds from the action or settlement that follows, is entitled to attorney fees." *Id.* (citation modified). So "[t]he plain meaning of the statute thus provides that only persons who receive a relator's share may recover attorney fees." *Id.*[2]

*Lovell* dealt with a *qui tam* suit against a medical software company. *United States ex rel. Lovell v. AthenaHealth, Inc.*, 56 F.4th 152, 155 (1st Cir. 2022). The government intervened, and the case settled. *Id.* at 156. The government paid a share to one relator, and the relator paid the other relators out of that sum. *Id.* All relators sought attorney fees. *Id.* The First Circuit held that the payment to the other relators was not a relator's share because it was awarded under a private agreement, not by the government. *Id.* at 159. And because they did not receive a relator's share, they were not entitled to attorney fees. *Id.*

## C

Conyers' final argument is that some courts award attorney fees as an "absolute statutory right."

But the cases Conyers cites are inapposite because they do not present the same factual scenario—in those cases, the relators received a relator's share before receiving attorney fees. *See United States v. Claris Vision, LLC*, No. CV 18-00176-MSM, 2024 WL 165172, at *2 (D.R.I. Jan. 16, 2024) (finding that "payment of reasonable fees is mandatory where the Relators recover a relators' share of proceeds including proceeds from a settlement"); *U.S. ex rel. Averback v. Pastor Med. Assocs. P.C.*, 224 F. Supp. 2d 342, 348

---

[2] The court noted that the statute states the person "shall also" receive attorney fees. *Bryant*, 24 F.4th at 1032. "The word 'also' presuppose[d] the receipt of something in addition to the attorney fees." *Id.* Therefore a relator must have received a relator's share to additionally receive attorney fees. *Id.*

(D. Mass. 2002) (calculating attorney fee amount after settlement); *United States ex rel. LeFan v. GE*, No. 4:00-CV-222, 2008 U.S. Dist. LEXIS 3020, at *5 (W.D. Ky. Jan. 14, 2008) (same); *see also Call One Inc. v. Berkley Ins. Co.*, 587 F. Supp. 3d 706, 713 (N.D. Ill. 2022) (analyzing the Illinois False Claims Act which authorizes dual relief in the form of penalties and damages).

## V

In order to receive attorney fees and other expenses under the FCA, a relator must have received a relator's share of the proceeds of the action or settlement. Since Conyers' claims were not settled, he did not receive a relator's share and is not entitled to attorney fees. The district court's judgment is AFFIRMED.